UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JORGE SALGADO MENDOZA,

        Petitioner,                  Case No. 1:25-cv-1252

v.                                       Honorable Paul L. Maloney

KRISTI NOEM et al.,

        Respondents.
_____/

## OPINION

Petitioner Jorge Salgado Mendoza initiated this action on October 16, 2025, by filing a counseled combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (Petition, ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention. Petitioner asks the Court for the following relief: to accept jurisdiction over this action; to declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act; to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Petitioner's immediate release or ordering Respondents to promptly schedule a bond hearing for Petitioner's removal proceedings and accept jurisdiction to issue a bond order; and, to award attorneys' fees and costs for this action. (Petition, ECF No. 1, PageID.17–18.)

Petitioner sought an initial temporary restraining order compelling his release and enjoining continued detention or, alternatively, a temporary restraining order compelling

Respondents to conduct a bond hearing to ensure Petitioner's due process rights. (*Id.*, PageID.2.) As an alternative to emergency injunctive relief, Petitioner asked the Court to order Respondent to show cause, within three days, why the petition should not be granted. (*Id.*) In an order (ECF No. 3) entered on October 21, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. Respondents filed their response (ECF No. 4) on October 22, 2025. Petitioner filed his reply (ECF No. 5) on October 27, 2025. For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Factual Allegations

Petitioner is a native and citizen of Mexico. (Hughley Decl. ¶ 4, ECF No. 4-1, PageID.47.) In 1995, Petitioner entered the United States "without being inspected and admitted or paroled by immigration officials." (*Id.* (noting that the "date, time, and place" of Petitioner's entry is unknown); Petition, ECF No. 1, PageID.1.)

On September 24, 2025, ICE Enforcement and Removal Operations (ERO) encountered and arrested Petitioner in Lowell, Indiana. (Hughley Decl. ¶ 5, ECF No. 4-1, PageID.47.) Petitioner was charged with inadmissibility pursuant to § 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner was an "immigrant who was present in the United States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General." (*Id.* ¶ 6, PageID.47–48.) Respondents contend that Petitioner is presently detained under § 235 of the INA on the basis that he "is an applicant for admission to the United States seeking admission and he is not clearly and beyond doubt entitled to admission." (*Id.* ¶ 7, PageID.48.) Petitioner was served with a Notice to Appear (NTA), the document charging him with inadmissibility. (*Id.* ¶ 6, PageID.47.) Respondents report that a "master calendar hearing is

2

scheduled for November 18, 2025" before the Detroit Immigration Court. (*Id*. ¶ 8, PageID.48.) Respondents note that Petitioner "has not requested a bond hearing." (*Id.*)

**II.     Exhaustion**

Respondents first contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not requested a bond hearing before the immigration court and, therefore, has not exhausted his administrative remedies. (ECF No. 4, PageID.26.) Respondents argue that Petitioner should request a bond hearing and, if necessary, appeal any unfavorable decision to the Board of Immigration Appeals (BIA). (*Id.*) Petitioner argues that exhaustion is not required for petitions brought pursuant to § 2241 and that, in any event, exhaustion should be excused, because requesting a bond redetermination would be futile. (ECF No. 5, PageID.50–54.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *See Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), to determine whether prudential exhaustion should be required." *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Thus,

3

courts may require prudential exhaustion when:

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner here, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all noncitizens who have resided within the United States prior to their

arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (2025). If Petitioner were to request a bond hearing before an immigration judge, that request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Moreover, it is simply unlikely that any administrative review by the BIA of that denial would lead the Government to change its position, and thereby obviate the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. A court may choose to rule upon the merits of the issues presented when the "legal question is fit for resolution and delay means hardship." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, there is no question that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to request a bond hearing before an immigration judge. There is no evidence in the record as to how long Petitioner would have to wait until such a hearing, if any, were scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239. 1245 (W.D. Wash. 2025). It is possible that a determination from the BIA as to whether Petitioner is entitled to bond would come before any

5

final decision regarding removal. Nevertheless, it is unmistakable that "depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that prudential exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

### III. Merits Discussion

#### A. Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (Pet., ECF No. 1, PageID.17.) According to Petitioner, noncitizens who "previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings" are detained pursuant to 8 U.S.C. § 1226(a) "and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231." (*Id.*) Respondents, however, contend that Petitioner "unambiguously meets every element for detention under § 1225(b)(2)," and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (ECF No. 4, PageID.28.)

In order to address the parties' arguments, this Court must engage in principles of statutory interpretation. "A statute should be construed so that effect is given to all its provisions." *Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends

6

there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). But, "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Raimondo*, 603 U.S. at 400.

With these principles in mind, the Court begins with the language of the statutes in question. Section 1225(b)(2)(a) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *See* 8 U.S.C. § 1225(b)(2)(a). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13). Section 1226(a), on the other hand, states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a).

Respondents argue that Petitioner "unambiguously is an 'applicant for admission' under the plain text of [§ 1225] because he is a noncitizen, he was not admitted to the United States, and he was present in the United States when he was apprehended." (ECF No. 4, PageID.28–30.) Respondents further assert that because "Petitioner has not agreed immediately to depart, logically

7

he must be seeking to remain—a legal action that requires 'admission,' i.e., a lawful entry." (*Id.*, PageID.31.) Respondents also argue that "applicant for admission" presumptively "characterizes all unlawfully present noncitizens as applying for admission until they are either removed or successfully obtain a lawful entry, regardless of their subjective intent." (*Id.*) Essentially, Respondents assert that § 1225(b)(2)(A) mandates the detention of any noncitizen who is "present" in the United States and who has not been lawfully admitted.

Respondents go so far as to state that "under the plain terms of the statute, all unadmitted noncitizens present in the United States are 'applicants for admission,' regardless of their proximity to the border, the length of time they have been present in the United States, or whether they ever had the subjective intent to properly apply for admission." (ECF No. 4, PageID.29.) Respondents cite *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020), in support of that statement; however, *Thuraissigiam* supports the opposite proposition. Vijayakumar Thuraissigiam, the Supreme Court noted, was one of "hundreds of thousands of aliens . . . apprehended at or near the border attempting to enter this country illegally." *Thuraissigiam*, 591 U.S. at 106. Thuraissigiam "was apprehended just 25 yards from the border." *Id.* at 107.

The Supreme Court distinguished Thuraissigiam's situation, as "an alien at the threshold of initial entry," from others—like Petitioner—as "aliens who have established connections in this country." *Id*. The Supreme Court explained:

> When an alien arrives at a port of entry—for example, an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule. On the contrary, aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are "treated" for due process purposes "as if stopped at the border." *Mezei*, 345 U.S. at 215; *see Leng May Ma v. Barber*, 357 U.S. 185, 188–190 (1958); *Kaplan v. Tod*, 267 U.S. 228, 230–231 (1925).
>
> The same must be true of an alien like respondent. As previously noted, an alien who tries to enter the country illegally is treated as an "applicant for admission," § 1225(a)(1), and an alien who is detained shortly after unlawful entry cannot be

8

> said to have "effected an entry," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Like an alien detained after arriving at a port of entry, an alien like respondent is "on the threshold." *Mezei*, 345 U.S. at 212.

*Id.* at 139–140 (parallel citations omitted). Respondents' assertion that the *Thuraissigiam* decision renders immaterial where or when a noncitizen is apprehended in relation to the noncitizen's entry into the country is disingenuous.[1]

As set forth above, § 1225(b)(2)(A) provides for the detention of an "alien seeking admission" after an "examining immigration officer" determines that the alien "is not clearly and beyond a doubt entitled to be admitted." In this Court's opinion, the phrase "seeking admission" refers to an action that is currently occurring and that would occur at the United States' border when the alien is being inspected. Here, under the facts and circumstances of Petitioner's case, an "examining immigration officer" did not make a determination as to whether Petitioner was not clearly and beyond a doubt entitled to be admitted when Petitioner came into the United States during 1995. Moreover, notably, Petitioner was not crossing the border when he was arrested and detained on September 24, 2025.[2] And, there is nothing in the record currently before the court

---

[1] Respondents also cite *Jennings v. Rodriguez*, 583 U.S. 281 (2018), in support of their expansive reading of § 1225. (ECF No. 4, PageID.29.) But the *Jennings* decision, like *Thuraissigiam*, supports treating Petitioner differently than a noncitizen subject to § 1225. In *Jennings*, the Supreme Court noted that:

> Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more . . . classes of deportable aliens." § 1227(a). That includes aliens who were inadmissible at the time of entry . . . . *See* §§ 1227(a)(1), (2). Section 1226 generally governs the process of arresting and detaining that group of aliens.

*Id.* at 288.

[2] Conveniently, **_after_** Petitioner was detained on September 24, "DHS determined that Petitioner was an applicant for admission seeking admission, and not clearly and beyond doubt entitled to admission under 8 U.S.C. § 1225(b)(2)." (ECF No. 4, PageID.25.)

9

suggesting that Petitioner ever attempted to gain lawful status in the United States before being apprehended and detained.

In light of the foregoing, the Court concludes that § 1225(b)(2)(A) applies to aliens undergoing inspection, which generally occurs at the United States' border, when they are seeking lawful entry into the United States. Thus, because the record indicates that Petitioner resided in the United States for many years before being arrested and detained, there is simply no logical reason to interpret § 1225(b)(2)(A) as applying to Petitioner given that Petitioner was not actively "seeking admission" during those years.

Unlike § 1225(b)(2)(A), section 1226(a) provides that, when dealing with "apprehension and detention of aliens," the Attorney General may issue a warrant and "arrest[] or detain[] [an alien] pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a). Here, § 1226(a) clearly applies to Petitioner's situation—Petitioner was apprehended, arrested, and detained, while he was residing in the United States. Petitioner has been detained pending removal proceedings before an immigration judge; thus, under § 1226(a), the Attorney General has discretion to either detain or release Petitioner on bond or conditional parole. This language clearly allows the noncitizen to request a bond redetermination by an immigration judge.

This Court's conclusion is consistent with the Supreme Court's clarification that sections 1225 and 1226 apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). As the *Jennings* Court noted, § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Section 1226, however, applies to the process of "arresting and detaining" aliens who are already living within the United

States but are still subject to removal. *See id.* at 287. Thus, in *Jennings*, the Supreme Court differentiated between noncitizens arriving to the United States, who are, therefore, governed by § 1225, and noncitizens already present in the country who are, accordingly, governed by § 1226.

Moreover, the Court cannot ignore Congressional intent when conducting statutory analysis. Recently, Congress passed the Laken Riley Act, which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), **and** who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Quite simply, were the Court to agree with Respondents' interpretation of §§ 1225 and 1226, § 1226(c)(1)(E) would be rendered entirely superfluous.

The Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested. The reading of the pertinent statutes clearly supports this conclusion. Moreover, this Court is far from the first federal district court to reach this conclusion. Petitioner cites dozens of cases reaching the same conclusion. (*See* Pet'r's Reply Br., ECF No. 5, PageID.70–72). Respondents do not cite a single case adopting their interpretation of the relevant statutory provisions.

      **B.**    **Fifth Amendment Due Process Considerations**

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. Petitioner avers that "Respondents have not put forth a credible argument that [he] "cannot be safely released to his community and family." (ECF No. 5, PageID.58.) He contends that he "should have the opportunity to have a bond hearing before an Immigration Judge," and that "[b]y issuing its decision in *Matter of Yajure Hurtado*, the BIA has taken nearly all bond authority away

11

from Immigration Judges." (Petition, ECF No. 1, PageID.16.) Respondents counter Petitioner's arguments by stating that Petitioner has received due process because he "received notice of the charges against him, has access to counsel, is scheduled to attend hearings with an immigration judge, can request bond at that time, has the right to appeal the denial of any request for bond, and has been detained by ICE for only four weeks." (ECF No. 4, PageID.43.)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Thus, noncitizens such as Petitioner are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 236837, at *4 (6th Cir. Jan. 18. 2023).

Respondents contend that Petitioner is entitled to no further process at this time. (ECF No. 4, PageID.43.) Respondents' assertion, however, is contradicted by their own supporting evidence—there is nothing in the record before the Court to suggest that a bond hearing has been scheduled. Respondents claim further that "statutory provisions denying bond during administrative removal proceedings do not violate the [D]ue [P]rocess [C]lause." (*Id.*, PageID.41.)

Granted, if this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), the Government's due process argument might hold true. However, as set forth above, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute explicitly allows the Attorney General to continue to detain the arrested alien, or release the alien either "bond of at least $1,500 with security approved by, and containing conditions

12

prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1), (2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). Thus, under *Mathews*, this Court must consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Petitioner, through counsel, represents that has four United States citizen children and that Petitioner's detention puts his family at financial risk. (Petition, ECF No. 1, PageID.2.) Petitioner is now detained at a processing center that is, presumably, in a different state than his home and family, and he is unable to financially provide for them. (*Id*., PageID.6.) There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of

13

contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." See *Günaydin*, 2025 WL 1459154 at *7.

Likewise, the second *Mathews* factor weighs in Petitioner's favor, Clearly, there is a high risk of erroneously depriving Petitioner of his freedom should he not receive an individualized bond hearing at which the immigration judge can assess whether Petitioner poses a flight risk and/or a danger to the community.

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." See *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). However, on the record before the Court, Respondents have not shown that it has a significant interest in Petitioner's continued detention. Notably, continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

## IV.   Request to Dismiss Respondent Noem

Respondents request that the Court dismiss Respondent Noem from this action, contending that she is not properly joined as a respondent in this action. (ECF No. 4, PageID.43–44.) "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of [§] 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction'

14

> requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "concluded that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named Robert Lynch, the ICE Field Office Director, and Kristi Noem, Secretary of the Department of Homeland Security, as Respondents.

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas,* 194 F. Supp. 2d at 374. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft,* 216 F. Supp. 2d 51, 55 (E.D.N.Y.2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); *Rosenbloom, supra,* at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte,* 2000 WL 1617999, at *8 (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, in order to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and directive that Petitioner receive a bond hearing or,

15

alternatively, be released, in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings.

**V.     Summary**

For the reasons set forth above, the Court disagrees with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A) and, therefore, that Petitioner is subject to mandatory detention. Instead, the Court concludes that Petitioner's detention is governed by § 1226(a) and, therefore, that Petitioner is entitled to a discretionary and individualized bond determination as set forth in that statute. Likewise, the Court finds that because Petitioner's detention is governed by § 1226(a), his current detention under § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

As the Eastern District of Michigan recently stated, "[t]he recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10. While Petitioner is entitled to a bond hearing, the Court notes that the immigration judge is in a better position to evaluate whether Petitioner poses a flight risk and a danger to the community. Accordingly, the Court leaves to the immigration judge's sound discretion a determination on that issue.

## Conclusion

The Court will enter an order and judgment granting Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of

the date of this Court's opinion and judgment to certify compliance with this opinion. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.


Dated:   November 4, 2025                             /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge